Good afternoon, your honors. Mr. Neidert, my name is Lori Tyker, and I'm appearing on behalf of the petitioner appellant in this case, Mr. Matthew King. I would ask to reserve two minutes for rebuttal. There's a number of issues before this court that were certified for appeal in this case, and I'd like to begin with the sufficiency of the evidence, Jackson v. Virginia claim, with regards to the first-degree kidnapping. Under Nevada law, there are a number of different standards that apply to determine whether or not first-degree kidnapping does lie when you have another offense, such as robbery in this case, or the attempt murder that was also charged in this case. Pursuant to Nevada law, and the problem regarding Jackson v. Virginia and why the Nevada Supreme Court reflected an unreasonable application of that standard, is that here the state law requirement of kidnapping was not proven beyond a reasonable doubt. If you have a kidnapping, and that kidnapping is incidental to another offense, a separate conviction for the kidnapping as well as that robbery will not stand unless you have an additional risk of harm or you have some independent purpose of that kidnapping under Nevada law. I hear, counsel, where she was moved into the shower and there was a cord around her neck and handcuffs on her. Wasn't there some additional risk of harm? Your Honor, I would argue that there's not. If you look at the facts of this case, you have a situation where this incident took place in what was appropriately described by the district court as an hourly hotel that was somewhat seedy and not quite a four-star property, I believe is how it was termed. You have a situation here where you have an extremely small room. And, Your Honor, respectfully, I would say in terms of this, especially when you look at other Nevada law, size matters in this case as far as this kidnapping. In preparing for argument, I was looking around my room, and I wasn't in a seedy hourly motel. My room was slightly bigger. However, I would argue that if you're looking at the facts of this case, you have a situation here where you have an extremely small room. You were paying by the hour. Excuse me? You were not paying by the hour. No, I was not. The federal per diem, thankfully, allows me to stand somewhat next to her. The government hasn't reduced the per diem. Yes. Thankfully. Your Honor, Nevada kidnapping, when you have a situation where, as if you're looking at what Ms. Hatzity testified to, she alleges that the attempt murder took place in the room, and then Mr. King also says that he disputes that. However, upon coming back, sees her passed out and moves her into the bathtub. If you're in an extremely small room that you are, I just — if you're looking at the intent of Nevada kidnapping and the intent of the legislature and their concern with double punishment of the accused, that can't be what the legislature intended, especially if you look at the Nevada Supreme Court law in interpreting this incidental to the robbery dilemma that you have here. You have cases such as Langford, such as Wright, where you have — in Wright, you have a motel robbery where they come into the front. They hold up the clerk, the auditor, and a guest. They take them to a back office, which is 20 to 40 feet behind. They tape them up, leave them there, and then leave. The Nevada Supreme Court said that that's incidental to a robbery. That's not a kidnapping. Here you have an extremely small room. You have her placed within a bathtub, which the testimony is not disputed between the State and the defense that that amount of space is less than 4 feet. My argument there is that there was no additional risk of harm to Ms. Hatzity placed upon that movement. Would your premise be that the cord and the handcuffs were put on her before she was moved? Well, it's hard to know what really did happen. Mr. King's defense was that this was a rough sex-type scenario. And she testified — Ms. Hatzity testified that when she regained consciousness in the bathtub, that the handcuffs were on her. Now, certainly, I would have a much more difficult argument to make, Your Honor, in terms of the kidnapping being incidental to the robbery, had she perhaps been handcuffed to something in the bathroom or handcuffed to something in the bed — in the bedroom. But what you have here is you have a situation where she regains consciousness and she has handcuffs on, but they're handcuffs on one wrist. They're not on the other wrist. She's not attached to anything. I just don't see that the handcuffs are necessary for perpetuating either the substantial bodily harm, which she testifies happens in the room, not in the bathroom, before she lost consciousness. What about the cord around her neck? When did that get attached? There's some discrepancy in the testimony regarding that, Your Honor, and in the medical reports, which no one really explained. They were just introduced into evidence and given to the jury to take back into the room. She testified, and there's a lot of discrepancies in terms of what she says happened. And she's one of those witnesses where her memory gets better as time goes on versus her — But, you know, Counsel, this is something the jury decided, and I guess the question is whether there's evidence from which they could conclude that there was a possibility of additional harm when she was moved and had a cord put around her neck and a handcuff put on her. Your Honor, I believe that the Nevada Supreme Court's analysis of this, in reviewing the sufficiency that that jury saw, is such that it does represent an unreasonable application of Jackson, and it does not — pursuant to Nevada case law, it's simply the kidnapping cannot stand in addition to that attempt murder claim. Well, when you move somebody with a cord around the neck, that does increase the chance of harm. You'd have to concede that, or a jury could conclude that, right? They could. But, again, it would depend on how tightly it was wound, whether or not it happened before or after the movement, and there is some discrepancy as to whether or not that happened. So I don't — But in the double layer of review on this record, a jury could — a rational juror could conclude that she was dragged there with a cord around her neck and a handcuff on, and that substantially increased the danger. Don't you agree?  The risk of danger for the victim. Again, you know, he's charged with the attempt murder and the kidnapping. You know, I think it's arguable that all of those things go towards an attempt murder and not necessarily a kidnapping, and that's what often happens in these cases is that you have the underlying offense of it either being the attempt murder or the robbery, and then they add on this additional kidnapping. And, you know, did a true kidnapping happen here, or was it incidental to either the attempt murder that the jury convicted him of or the robbery? And my argument is, pursuant to Jackson v. Virginia, looking at Nevada state law, the Nevada Supreme Court's analysis of that was such that, based upon our law in our state regarding incidental to the offense, increased risk of harm, no rational juror could have found that the essential elements of that crime were proven beyond the zero doubt. I guess I wasn't really going to get in on this, but under the first degree kidnapping, and according to Nevada law, you can move the victim for the purpose of facilitating the robbery, can't you? Yes. And if we have evidence that, even from your client, I moved her body to the shower and fled, I was in the hotel room, there's no question that one could say that handcuffing would aid your client in preventing her from attempting to resist or from even doing anything about it if he comes in and gets away with the money in the car or the movement to the shower. Her ability to do anything about him taking whatever he wanted to take and getting out of there certainly impedes her ability to do anything about that because she's now not in the front room where she can yell and everybody can hear, she's in the back room in the shower. It would not be immediately observed by the plaintiff or by your client. It would allow your client to escape. So one could, under AEDPA standard, even suggest that we don't even have to get to the bodily harm. We could talk about facilitating the robbery, couldn't we? It certainly could. And was there sufficient evidence on an AEDPA review to make that standard? I don't think so, Your Honor. And my argument there is a couple of different things. Again, the size of the room. You have a situation where there's clear law in Nevada saying that distance is much different, much greater, than you have this teeny, teeny motel room where kidnapping doesn't lie incident to the robbery. You also have case law that talks about how taping up victims is incidental to the robbery. It's not a stand-alone kidnapping. In my mind, these handcuffs, while they sound like handcuffs, it sounds bad. Again, it's on one wrist. The other one's not even attached. It would be a far different situation had she actually been attached to something or even attached together. It's just not there. And, quite frankly, more consistent with the defense of Mr. King in that there was some rough sex going on here. Okay. And I'm 30 seconds. Yes. You've actually gone over time, but our questions took you over, so we'll give you a couple minutes. Thank you. May it please the Court, Counsel. My name is David Neidert. Again, I'm still a Senior Deputy Attorney General for the State of Nevada. Welcome back. Thank you. The focus on this oral argument has been the kidnapping as opposed to the other charges. And I think mainly because the other charges suffer from the problem of what they call in the law that some other dude did a defense, and that is after leaving her, somebody else somehow became aware that she was alone in the room, came in, stole her stuff, took her car, and fled, even though she testified consistently in this respect that the person who attacked her was Mr. King. With respect to the kidnapping, the Nevada Supreme Court didn't ignore the law, its own Nevada law, with respect to whether or not how much movement is required, but rather addressed it and differentiated it. And, in fact, the Nevada Supreme Court's decision is pounded on pages 511 and 512 of the Executive Record, and the Nevada Supreme Court said that we conclude that sufficient evidence supports a first-degree kidnapping. The element of aspiration is satisfied based on the victim's testimony that before losing consciousness that she was struggling with King near the bed, outside the bathroom, and that when she regained consciousness she was handcuffed in the shower and was bound with a telephone cord around her neck. This amount of movement and restraint was not merely incidental little robbery. While the victim was unconscious, King could have taken her keys, money, and car without having to move or otherwise restrain her. Additionally, outside of this little bit of analysis are the fact of the handcuffs, and the evidence are not that the handcuff was on one wrist. The evidence is that the handcuffs were on both wrists, but fell off of one wrist. There were marks on both wrists that were observed. Additionally, there was also testimony from Ms. Hatzady at trial that when she woke up in the bathtub with the cord around her neck, she found she had a hard time breathing. In other words, there was at least a little bit of, it would appear based on that, a little bit of choking from this telephone cord around her neck. So in fact there was increased risk to her, and certainly the jury was allowed to believe her when she said, I had trouble breathing when I regained consciousness. So with respect to the kidnapping, I think the Nevada Supreme Court clearly differentiated its own law with respect to movement all by itself not being necessary. And I want to say this isn't a case of not being only necessary, and it doesn't matter how small the room was, but in this case the movement was such that it increased the risk to the victim in the case, and that made it a kidnapping under Nevada law. Additionally, it made it much easier for Mr. King to steal her stuff, take her car, and flee. So with respect to the kidnapping, I think the Nevada Supreme Court's conclusion in analyzing Nevada law was quite proper and was not unreasonable, and a jury properly instructed could look at these facts and say, yes, in fact, that kidnapping did occur in addition to Mr. King choking her out and her continuing to choke her even after she pretended to be unconscious and her car being missing and all that, which the jury could rationally conclude the taking of her purse and the taking of her car constituted both robbery and grand theft auto under Nevada law. But you'd have to concede without any movement you don't have a kidnapping charge, right? I think the Nevada law says restraint can also do that, but we have the movement in this case. So there was, you know, there's obviously restraint with the handcuffs, but there also obviously is the concession that there was movement. I'd also like to point out that with respect to the defense of there being rough sex, that's really not a defense. That's an argument that was made by counsel in closing argument, and as we're always admonished, argument by counsel is not evidence. There was no actual testimony by anybody regarding rough sex. This was a case where the prosecution put on its witnesses, Mr. King exercised his constitutional right not to testify, and his attorney argued. And he argued there was rough sex, but there's actually no testimony of any kind that there was rough sex in this case. Unless any of you, any of your honors have questions, I believe I've made my points. Anything further? Okay. Thank you, counsel. Thank you, Your Honor. We will give you a couple minutes, if you want. Thank you, Your Honor. Very briefly, there's a number of issues and things that went wrong with this case, and there's a number of issues that were certified. And I would ask that this Court take a look at those issues, in addition, the other issues that this Court chose to certify after the briefing had been submitted. Especially strange in this case is you have a situation where you have a detective who testified as to the cause of the alleged victim's injuries in this case, and then they simply submit the medical records to be sent back with the jury. You have a detective who's a robbery detective, has been a homicide detective at the time of that we actually go to trial. At the time that the event occurred, he was a robbery detective. He'd been a homicide detective for about six months, I think. He'd possibly testified to being involved in three or four cases that involved strangulation, and yet he was found by the Nevada Supreme Court to be an expert. Again, a problem with that. I think we have those issues in hand. I only interrupt because if you're raising new issues in rebuttal, we may have to give you a chance to respond. For the reasons that I've briefed, I would ask that you grant Mr. Kingston his sentence. Thank you. Thank you, Counsel. Case report will be submitted.
judges: Fletcher B. , Thomas, Smith M.